10969. SOUTHEASTERN FAIR ASSOCIATION *v.* WONG JUNG.

The alleged unlawful and unprovoked assault by the defendant's agent or servant is not alleged to have been made at the command or with the assent of the defendant; and the general allegations to the effect that the assault was within the range and in the prosecution of the defendant's business, and within the scope of the employment of the agent or servant, are mere conclusions, not sustained by any facts set forth in the petition. The court erred in overruling the general demurrer to the petition.

DECIDED JANUARY 28, 1920.

(Certiorari was granted by the Supreme Court.)

Action for damages; from city court of Atlanta—Judge Reid. September 25, 1919.

*Mayson & Johnson, W. D. Ellis Jr.,* for plaintiff in error, cited: Park's Code, § 3603; 6 *Ga. App.* 470, 471; 145 *Ga.* 561; 113 *Ga.* 1105; 97 *Ga.* 56; 121 *Ga.* 484, 486; 113 *Ga.* 414, 118 *Ga.* 340 (distinguished).

*B. H. & Harvey Hill, Fred E. Harrison,* contra, cited: 118 *Ga.* 340, 344; 20 Am. & Eng. Enc. L. (2d ed.) 169; 1 Add. Torts (Wood's ed.) sec. 36; 1 Jagg. Torts, 251; 40 Am. Rep. 224.

BROYLES, C. J.   This was a suit for damages based upon the alleged willful homicide of the plaintiff's husband by an employee of the defendant.   The petition as amended showed: that the defendant, the Southeastern Fair Association, was a corporation operating for pecuniary gain a fair in Fulton county, and that it let out for hire various concessions upon its grounds, such as restaurants, cafés, and soft-drink stands; that it had rented for a large sum a concession to the plaintiff's husband (a Chinaman), and had located it at a certain place on the fair grounds; that one McDonald was employed by the defendant as its manager of concessions, and that as such manager, and as servant and agent of the defendant, acting for and in behalf of it, he ordered the plaintiff's husband to change the location of his concession, and, upon the latter's refusal to do so, McDonald struck him on the head with an iron instrument, thereby killing him.   The petition further alleged that this assult was without provocation or justification, and was wanton, wilful, and unlawful, but was within the scope of McDonald's employment as manager of concessions, and was committed for the purpose of forcing the concessionaire to move his concession, and was for the purpose of accomplishing in an unlawful manner the business of the corporation which had been entrusted to him.

Section 3603 of the Civil Code of 1910 is as follows: "The principal is not liable for the wilful trespass of his agent, unless done by his command or assented to by him."   Section 4413 reads as follows: 'Every person shall be liable for torts committed by his wife, and for torts committed by his child, or servant, by his command or in the prosecution and within the scope of his business, whether the same be by negligence or voluntary."   These two code-sections should be construed together, so as to harmonize

them and allow both to remain of force, in the cases to which they are applicable. *Western & Atlantic Railroad* v. *Turner, 72 Ga.* 292 (2-a) (53 Am. Rep. 842).

The petition in the instant case shows that the agent or servant of the defendant committed an unprovoked, wanton, wilful, and unlawful assult upon the plaintiff's husband, which caused his death, but it fails to show that it was done by the defendant's command or that it was assented to by the defendant, or that it was in the prosecution or within the scope of the master's business. The general allegations in the petition to the effect that the assault was in the prosecution and within the range of the master's business and within the scope of McDonald's employment are mere conclusions of the pleader and are not sustained by any fact or facts set forth in the petition. When the petition is construed as a whole, and most strongly against the plaintiff, it shows that the assault by McDonald was not committed for the purpose of accomplishing his master's business by having the Chinaman's concession relocated, but merely that it was made to punish the Chinaman for the "back talk" which the petition shows he made when McDonald notified him that his concession must be relocated. In making this wilfull and unnecessary assault, it appears that McDonald temporarily forgot his master's business, stepped aside therefrom, and made it a personal matter with the Chinaman, and inflicted the beating to relieve his own anger and ruffled feelings. If McDonald had attempted physically to remove the concession to another location on the fair grounds (conceding that he had implied authority to do so), and the Chinaman by physical force had attempted to prevent the removal, and McDonald had then assulted him for the purpose of making him desist from his interference, then, even though McDonald used more force than was necessary, it would be properly held that the assault, although criminal, in that more force than necessary was used, was nevertheless within the range of his employment, and was committed for the purpose of accomplishing the business of his master which had been entrusted to him. See, in this connection, *Southern Ry. Co.* v. *James,* 118 *Ga.* 340 (45 S. E. 303, 63 L. R. A. 257). It is, however, difficult to see how such a wilful, unprovoked, unnecessary, and disconnected assault as the one now under consideration could ever be held to be within the scope of the servant's employment, unless it was directed by the master or assented to.

by him, it not appearing that the servant had authority, express or implied, to use any degree of physical force whatever to carry out his master's business.

This ruling is not in conflict witht the decision in *Southern Ry. Co.* v. *James,* supra, cited and relied upon as controlling in this case by the learned counsel for the defendant in error. In that case the servant was a nightwatchman employed by the railroad company for the special purpose of arresting all trespassers upon the company's property. He arrested James as a trespasser, and was taking him to jail, when James broke away and fled; the watchman shot and wounded him, and James sued the railroad company for damages. While the Supreme Court in that case discussed generally the question of a master's liability for his servant's tort, the real point decided was that the railway company was liable for the criminal shooting of the trespasser by its servant, for the reason that he had been employed by the company for the special purpose of *arresting* and *imprisoning* trespassers, and, in this connection, had been given orders by the company which implied the use of *force and violence* to others, and which left it to his discretion to decide when the occasion required force, and the kind and extent of force to be used. That case is clearly distinguishable from the instant one. See, in this connection, 26 Cyc. 1539, 1540, 1541, 1542, and authorities there cited.

In the absence of anything in the petition showing that a duty rested upon the defendant to protect its concessionaires from violence, or that it was within the defendant's authority, or within the range of its business, to force a concessionaire to relocate his concession after he had paid for the privilege of operating it at the place where it had been located by the proper agents of the defendant, or that McDonald had any authority, by virtue of his employment as manager of concessions, or otherwise, to order a concessionaire to relocate his concession, and especially to use actual physical force to compel him to do so, it does not appear that the wilful, unprovoked, and murderous assault committed' by McDonald was within the range and scope of the defendant's business, or McDonald's employment. If it were, then a real-estate agent, employed by the owner of a house to collect rent therefor, who wilfully killed the tenant for his mere refusal to pay the rent, would be acting within the scope of his employment, and the prop-

erty owner would be liable in damages for this wilful and un-authorized act of his agent; or if a merchant sent a professional bill-collector to collect an account past due, and the collector wilfully and wantonly killed the debtor upon his mere refusal to pay the account, then the merchant would be liable civilly for this act of his agent. Such rank injustice can not be the law. The defendant's agent, McDonald, is clearly liable, both civilly and criminally, for his tort, but, under the facts of the case as shown by the amended petition, the defendant is not responsible therefor, either legally or morally. It follows that the court erred in overruling the defendant's general demurrer to the amended petition.

  *Judgment reversed. Luke and Bloodworth, JJ., concur.*