## 27586. BROWN *v.* UNION BUS COMPANY *et al.*

Decided December 5, 1939. Rehearing denied December 19, 1939.

*R. Earl Camp,* for plaintiff.

*R. M. Daley, Irving S. Nathan, Haas, Gambrell & Gardner,* for defendants.

Stephens, P. J. Earl Brown brought suit for damages on account of personal injuries against Union Bus Company, Southeastern Greyhound Lines, Service Coach Lines Inc., American Fidelity & Casualty Company, Republic Underwriters, and J. B. Griggs, alleging that the defendants were jointly and severally liable to him. The plaintiff alleged that J. B. Griggs was the general agent and servant of all of the common-carrier defendants, in charge of their union-bus terminal in the City of Dublin, selling tickets, handling the money from the sale of tickets, and having the management and direction of their busses in Laurens County and of busses making ingress to and egress from the bus station which is located between the Thompson Hospital and the Standard Oil Company; that the busses of the defendants have no shed at this location, but only an office which abuts on the street, and all busses have a common, but no other, right to park on the curbing

at the bus station and vicinity with all other owners and operators of motor vehicles; that on October 2, 1937, the plaintiff, who was working as a general male attendant for the Hicks Hospital in the said city, was sent by automobile on an emergency mission to Thompson's Hospital for a medicine needed in a case of great urgency; that the plaintiff parked the automobile of his employer at the Thompson Hospital and entered the door of the hospital where he was met by a nurse thereof with the required medicine, and that as the plaintiff started to return to his automobile, and as he reached the bottom steps of the hospital, he was met by the defendant Griggs who, without notice or warning, brutally and maliciously struck the plaintiff with a pair of brass knucks or other blunt instrument, inflicting painful and permanent injuries, for which this suit is brought. The plaintiff further alleged that he was assaulted without cause, in public, by Griggs, the agent and servant of the defendants; that said Griggs, in addition to his other duties in behalf of his employers, undertakes to keep certain spaces within the vicinity of the station clear of all other motor vehicles, but that no right has been conferred upon the defendants thereto, and that Griggs, after the plaintiff had parked in front of the hospital, near the bus station, although no bus was parked there at the time, nor was one due there, and undertaking to accomplish and carry out his employers' business, resorted to the attack on the plaintiff, and in the perpetration of the assault Griggs was acting within the prosecution and scope of the business of the defendants.

It was alleged that the defendant, "American Fidelity & Casualty Company of Richmond, Virginia, is an indemnity insurance company for and in behalf of the Union Bus Company and the Southeastern Greyhound Lines, . . and which said indemnity company has qualified under the laws of the State of Georgia to secure said Union Bus Company and the Southeastern Greyhound Lines against loss for the protection of the public against injuries caused by the negligence of said motor carriers, by themselves, their agents or servants." It was also alleged that the defendant "Republic Underwriters is a . . corporation . . qualified under the laws of Georgia to write indemnity insurance for common carrier motor busses insuring them against loss on account of the negligence of themselves, their agents and servants; and

that it has insured the said Service Coach Lines Inc., as provided by law." It was also alleged that the insurance companies are non-resident corporations and that each has within the State of Georgia agents upon whom service of suits can be legally perfected.

The judge dismissed the action on general demurrer, and the plaintiff excepted.

"Every person shall be liable for torts committed by . . his servant, by his command or in the prosecution and within the scope of his business, whether the same shall be by negligence or voluntary." Code, § 105-108. Under the allegations of the petition it appears that the duties of the servant of the defendants consisted in keeping the space at the curbing, both in front of the bus station of the defendants and in the vicinity thereof, free from automobiles, so that the busses of the defendants could have ingress to and egress from the station; that the plaintiff parked his automobile in front of the hospital, which was adjacent to and near the bus station; that after he had so parked his automobile the defendants' servant resorted to the attack upon the plaintiff's person; and that such servant was, at the time he assaulted the plaintiff, acting in the prosecution of the defendants' business. See *J. M. High Co.* v. *Holler*, 42 *Ga. App.* 657 (157 S. E. 209); *Great Atlantic & Pacific Tea Co.* v. *Dowling*, 43 *Ga. App.* 549 (159 S. E. 609); *Personal Finance Co.* v. *Whiting*, 48 *Ga. App.* 154 (4) (172 S. E. 111), and cit.; *Seaboard Air-Line Ry. Co.* v. *Arrant*, 17 *Ga. App.* 489 (2a) (87 S. E. 714); *Century Bldg. Co.* v. *Lewkowitz*, 1 *Ga. App.* 636 (57 S. E. 1036); *McClure Ten Cent Co.* v. *Humphries*, 29 *Ga. App.* 524 (2b) (116 S. E. 54).

A master is liable for a tort committed by his servant in the prosecution and within the scope of his business, whether by negligence or wilfully. *Savannah Electric Co.* v. *Wheeler*, 128 *Ga.* 550 (58 S. E. 38, 10 L. R. A. (N. S.) 1176). A master is liable for the wilful torts of a servant, committed in the course of the servant's employment, just as though the master had himself commanded them. *Central of Georgia Ry. Co.* v. *Brown*, 113 *Ga.* 414, 415 (38 S. E. 989, 84 Am. St. R. 250). See *W. & A. R. Co.* v. *Turner*, 72 *Ga.* 292 (53 Am. R. 842); *Peeples* v. *Brunswick &c. R. Co.*, 60 *Ga.* 281; *Gasway* v. *A. & W. P. R. Co.*, 58 *Ga.* 216. The expression "in the scope of his business" or "in the scope of his employment," or similar words, has sometimes been given too nar-

row a meaning. It is not essential to the liability of a master for the wilful and intentional tort of a servant that the servant shall have acted at the command of the master or with the master's consent. *Ford* v. *Mitchell*, 50 *Ga. App.* 617 (179 S. E. 215). A master rarely commands a servant to be negligent, or employs him with the expectation that he will commit a negligent or wilful tort.

The question is, was the defendants' agent, at the time he committed the tort, acting in an individual capacity, or as agent of the defendants in charge of the bus station? The assault was committed within the near vicinity of the bus station and after the plaintiff had parked his automobile near the bus station, and within that vicinity which the agent was charged by the defendants with the duty of keeping clear of automobiles. There is not the slightest intimation that the agent had been wronged personally by the plaintiff, or that he had any personal grievance against the plaintiff. The assault on the plaintiff was the method which the defendants' agent employed in carrying out his duty to prevent parking of automobiles near the bus station. The averment that "in the perpetration of said injuries he [the agent and servant of the defendants] was acting within the prosecution and within the scope of his employers' business" was good against the general demurrers of the defendants. See *Savannah Electric Co.* v. *McCants*, 130 *Ga.* 741 (2) (61 S. E. 713); *Thompson* v. *Wright*, 109 *Ga.* 466 (34 S. E. 560). The tortious act of the defendants' agent was in the prosecution of their business, and was not in the prosecution of his individual business.

This case does not fall within the principle that the master is not liable where the servant steps aside from the master's business, for however short a time, and does an act entirely disconnected therewith. The petition set out a cause of action against the defendants, Union Bus Company, Southeastern Greyhound Lines, Service Coach Lines Inc., and J. B. Griggs. The court erred in sustaining their demurrers. It does not appear that Griggs, the alleged agent by whose alleged act the plaintiff was assaulted, was an agent of the other defendants, or that he acted for or in their behalf. It does appear, however, in the petition that the defendant, American Fidelity & Casualty Company, qualified under the laws of Georgia to secure two of the defendant carriers "against loss and for the protection of the public against injuries caused

by the negligence of said motor carriers, by themselves, their agents or servants." It appears also that the defendant, Republic Underwriters, "is qualified under the laws of Georgia to write indemnity insurance for common carrier motor busses, insuring them against loss on account of the negligence of themselves, their agents and servants," and that it has insured the other motor carrier defendant "as provided by law." These allegations are sufficient as against general demurrer to show that these insurance company defendants have each executed insurance policies, required by law to be issued under the authority and approval of the public-service commission, to indemnify persons injured by the negligent operation of motor carriers to whom the public-service commission has issued certificates for their operation as provided by law. See Code, §§ 68-501-68-509. Such an insurance company may be sued jointly with the motor carrier. Ga. L. 1937, pp. 727, 729.

The petition set out a cause of action against all the defendants, and the court erred in sustaining the demurrers.

*Judgment reversed. Felton, J., concurs.*

SUTTON, J., dissenting. It was alleged in the petition (par. 10) that J. B. Griggs was the general agent of the defendant motor carriers and in charge of their bus terminal in Dublin, Georgia, and the sale of tickets etc. and the management and direction of the ingress and egress of their busses to and from the bus station located on Franklin Street between Thompson's Hospital on the south and the Standard Oil station on the north; that (par. 11) the busses of said motor carriers have no shed at said location, but only an office that abuts on the public thoroughfare on a prominent street in Dublin known as Franklin Street, and that all of the said defendant carriers have a common, but no other, right to park on the curbing at said bus station and vicinity with all other owners and operators of motor vehicles; that (par. 12) the plaintiff was a male attendant for Hicks' Hospital and was sent by it in an automobile on an emergency errand to Thompson's Hospital for medicine needed in a case of great emergency; that the plaintiff, in the exercise of his legal rights, parked the automobile he was driving at the curb at Thompson's Hospital, which is adjacent to the bus station, for a small fraction of a minute, and ran up the steps of the said hospital where he was met by a nurse at the front door with the medicine, and as he started to return to the automobile

and upon reaching the bottom steps of the hospital he was attacked by J. B. Griggs, the servant of the defendants, without notice or warning and was maliciously struck and injured by him as therein alleged and (par. 18) that he was assaulted without cause; that (par. 22) "the said J. B. Griggs, in addition to his other duties in behalf of his said masters, undertakes to keep certain spaces within the vicinity of said bus station clear of all other motor vehicles, but no such right has been conferred upon said defendants, or either of them, by the mayor or council of the City of Dublin, or otherwise by law; and that said defendant Griggs recently for his employers, for the fact that the plaintiff had parked in front of the hospital and near said bus station, although no bus was parked there at the time, nor none due, and in his effort and undertaking to accomplish and carry out his employers' business he resorted to the reckless violence upon this plaintiff that has resulted in the injuries delineated, and that in the perpetration of said injuries he was acting within the prosecution and within the scope of his employers' business, and all of said acts being both voluntary and wilful."

The allegations of the petition show that the defendants had no more right to or control of the street in the vicinity of the bus stop than did the owners and operators of motor vehicles in general. The petition shows that the plaintiff parked his car in front of Thompson's Hospital only for a fraction of a minute while he ran into the hospital for a package of medicine which was handed to him by a nurse at the door, and that he was attacked by the defendant Griggs as he was leaving and while going down the steps of the hospital to his car. The car had already been parked in front of the hospital, and the assault could not have been made for the purpose of preventing the plaintiff from parking there. It is not alleged that the assault was made for the purpose of causing him to move the car or to keep him from parking in the future. It is my opinion that the facts alleged, instead of showing that Griggs was in the prosecution and discharge of his employers' business when he assaulted the plaintiff, show that he was not so engaged, but that he had stepped aside from the masters' business and made a personal attack or assault upon the plaintiff. Applying the rulings of law laid down in *Southeastern Fair Asso.* v. *Wong Jung*, 24 *Ga. App.* 707 (102 S. E. 32), *Daniel* v. *Excelsior Auto Co.*, 31 *Ga.*

502

*App.* 621 (121 S. E. 692), *Dugger* v. *Central of Georgia Ry. Co.,* 36 *Ga. App.* 782 (138 S. E. 266), and *Plumer* v. *Southern Bell Telephone Co.,* 58 *Ga. App.* 622 (199 S. E. 353), to the facts of this case, the petition did not set out a cause of action against any of the defendants except J. B. Griggs, and the court properly sustained the general demurrers of the other defendants.